# COURT OF APPEALS
# DECISION
# DATED AND FILED

## February 5, 2020

**Sheila T. Reiff**
**Clerk of Court of Appeals**

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2019AP2160**
**2019AP2161**

**Cir. Ct. Nos. 2019TP5**
**2019TP6**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

NO. **2019AP2160**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.K., A PERSON UNDER THE AGE OF 18:

RACINE COUNTY HUMAN SERVICES DEPARTMENT,

   PETITIONER-RESPONDENT,

 V.

S.J.A.,

   RESPONDENT-APPELLANT.

NO. **2019AP2161**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO L.K., A PERSON UNDER THE AGE OF 18:

RACINE COUNTY HUMAN SERVICES DEPARTMENT,

   PETITIONER-RESPONDENT,

**V.**

**S.J.A.,**

   **RESPONDENT-APPELLANT**

---

APPEALS from orders of the circuit court for Racine County: DAVID W. PAULSON, Judge. *Reversed and cause remanded for further proceedings.*

¶1     DAVIS, J.[1]  These consolidated termination of parental rights (TPR) cases concern mother S.J.A. and her minor children, A.K. and L.K.  S.J.A. appeals from the circuit court's order on partial summary judgment declaring her an unfit parent on the ground of abandonment, pursuant to WIS. STAT. § 48.415(1)(a), and from the subsequent orders involuntarily terminating her parental rights.  Because there are genuine issues of material fact as to whether S.J.A. had "good cause" under § 48.415(1)(c) for failing to visit or communicate with A.K. and L.K., we reverse and remand for a fact-finding hearing.

*Background*

¶2     A.K. and L.K. were born to S.J.A. and father J.K. in November 2011 and November 2012, respectively.  S.J.A. takes issue with the validity of grounds for the removal of the children from her home, and she disputes the facts concerning her efforts at communication.  It is undisputed, however, that A.K. and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

L.K. have lived with R.A., their great aunt (and S.J.A.'s aunt), since January 30, 2015. It is also undisputed that on February 5, 2015, the Racine County Human Services Department (the Department) commenced a children in need of protection or services (CHIPS) proceeding. That proceeding was resolved by virtue of an April 4, 2016 dispositional order, in which A.K. and L.K. were found to be in need. The Department took legal custody of the children, and they were formally placed in licensed foster care with R.A. The dispositional order was later extended through the children's eighteenth birthdays.

¶3      Attached to the dispositional order are a set of "ORDERS AND CONDITIONS REQUIRED FOR SAFE RETURN/CONTINUED IN-HOME PLACEMENT OF CHILD." These require S.J.A. to "COOPERATE WITH THE [Department]," "MAINTAIN A SUITABLE RESIDENCE," "MAINTAIN A RELATIONSHIP WITH THE CHILDREN," "DEMONSTRATE THE ABILITY TO SAFELY PROVIDE FOR THE NEEDS OF THE CHILD," and "PARTICIPATE IN SERVICES." Each of the five conditions lists numerous subconditions; for example, cooperation with the Department requires S.J.A. to "[m]aintain contact with the Department" and "not interfere with the placement of the children." The dispositional order further states that S.J.A. has "been orally advised of the applicable grounds for termination of parental rights (TPR)" and that "[w]ritten TPR warnings are attached."

¶4      At some point after her children's removal, S.J.A. moved to Washington state. Her last actual communication with her children was a March 24, 2017 telephone call. She made additional efforts to contact them; on May 30, 2017, a Department case manager wrote the following to S.J.A., denying her request for contact:

> Given the lengthy amount of time since you last visited with the children, their therapist is not recommending phone/video contact with them as the phone call will most likely have a negative impact on them, resulting in difficult behaviors to manage in the home and at school…. If you would like to discuss this matter further—please contact me at [telephone number].

The record does not indicate whether S.J.A. contacted her case manager or received instructions on how to reestablish telephone or video contact. S.J.A. attested in her affidavit, however, that she continued to make efforts to stay involved with her children, despite the Department's prohibition on communication; various pieces of electronic communication, also in the record, such as social media posts and text messages, support this assertion.[2]

¶5    S.J.A. returned to Wisconsin in January 2018. On February 6, 2018, S.J.A.'s case manager left her a voicemail, informing her that "[v]isits are not going to be arranged for [S.J.A.] and the kids yet," but that the case manager "touched base with the kids' therapist a couple of weeks ago and got recommendations for what it is that would be expected of [S.J.A.] to re-establish visits and that can be discussed Thursday."[3] On Thursday, February 8, S.J.A. met her case manager in person. According to the case manager's notes, at that meeting, the case manager

---

[2] It does not appear that these materials were properly authenticated, and in some cases are undated and incomplete. However, the materials were not objected to below, nor are they essential to the court's decision. On remand, a more complete record should be developed in connection with S.J.A.'s claimed efforts to communicate.

[3] The case manager provided an affidavit in support of summary judgment, but this history is based solely on what appear to be her notes in the case file. Substantively, the case manager's affidavit is limited to stating that there has been a CHIPS order since April 4, 2016, and that to the case manager's knowledge S.J.A. has not visited or communicated with the children since the March 24, 2017 phone call.

4

went through the disposition order [with S.J.A.] and reviewed conditions for return. [The case manager] also highlighted TPR grounds …. [S.J.A.] stated that she understands all the paperwork and requirements regarding the disposition, expectations, grounds for termination of parental rights and the permanence plan.

… [S.J.A.] asked if the kids will come home in August …. [The case manager] replied that reunification will occur if/when conditions for return are met.…

….

[S.J.A.] asked when she can see her children. [The case manager] informed [S.J.A.] that at this time, the kids' therapist is recommending no contact until [S.J.A.] shows some stability and follows through with any recommended services…. [The case manager] stated that [S.J.A.] must first participate in an evaluation and demonstrate stability.

[S.J.A.] stated that, to date, she has not signed anything and this is why she has never been permitted to visit her kids. [S.J.A.] agreed to sign a consent form for … a psychological evaluation.

¶6    On April 5, 2018, S.J.A. underwent the psychological evaluation that was a condition of reestablishing contact with her children. There is no record of S.J.A.'s complying (or not complying) with any other conditions for return, or taking (or not taking) any additional steps to "demonstrate stability" (this court does not have the case manager's complete file on S.J.A., as only select notes are included in the record). Therefore, it is unclear what, if any, steps S.J.A. took to promote reunification with her children. It is also unclear when S.J.A. relocated; at some point, however, she was again residing in Washington state.

¶7     On February 5, 2019, the Department[4] filed petitions to terminate S.J.A.'s parental rights; one asserted ground was abandonment pursuant to WIS. STAT. § 48.415(1)(a)2.[5]  That subdivision provides for the termination of parental rights where "the child has been placed … outside the parent's home by a court order … and the parent has failed to visit or communicate with the child for a period of 3 months or longer."  Sec. 48.415(1)(a)2.  The statute, however, also provides a defense:  "[a]bandonment is not established … if the parent proves … by a preponderance of the evidence … [t]hat the parent had good cause for having failed to visit with the child throughout the time period specified … [and] [t]hat the parent had good cause for having failed to communicate with the child throughout the time period specified."  Sec. 48.415(1)(c).

¶8     On May 17, 2019, the Department filed a motion for partial summary judgment seeking a finding that grounds for termination existed based on abandonment.  The Department argued that although "living out of state may constitute good cause for failing to visit her children, it does not constitute good cause for failure to communicate with her children."  The motion also modified the period of abandonment to begin on March 24, 2017 (the date of S.J.A.'s last communication with her children) through the date of the motion.  In response, S.J.A. argued that genuine issues of material fact precluded summary judgment. She contended that she had good cause to not communicate with her children,

---

[4] Although the Department filed the original CHIPS petition, the State actually brought the petitions for termination of parental rights, along with the subsequent summary judgment motion.  For consistency, however, this decision refers to the petitioner/respondent as the Department.

[5] The other ground was failure to assume parental responsibility, pursuant to WIS. STAT. § 48.415(6).

because the Department would not allow her to talk to her children via telephone or video, let alone visit them. S.J.A. also noted that she was complying with a condition for having contact with her children, by meeting with the Department's psychologist.[6] In its reply, the Department conceded that S.J.A. underwent psychological evaluation, but summarily argued that S.J.A. "failed to complete any of the other recommended services."

¶9      On June 18, 2019, the circuit court held the summary judgment hearing. The Department argued that as a matter of law, there was no good cause for S.J.A.'s failure to communicate with her children: there was a "condition precedent" to reestablishing communication, but S.J.A. "didn't participate in services" and "did not even come close to meeting that condition in order to connect with her children." The Department did not specify what these services or conditions were, and in fact, counsel for S.J.A. argued:

> It is very ambiguous to say she did not comply with services. What services did she not comply with? It's ambiguous to say that she's not cooperating. They need to delineate because it is their job what specifically she needs to do in order to be able to have telephone, video contact or even physical contact …. But they don't indicate that.

The children's guardian ad litem (GAL) also appeared; he agreed with the Department that summary judgment was warranted and argued that "[S.J.A.'s] situation was created by her…. [S.J.A.] had not participated in services that were offered." It is unclear, however, to which time period the GAL was referring—he may have been pointing to a failure to participate in services following S.J.A.'s

---

[6] S.J.A. further argued that the Department's decision to prohibit communication with her children constituted a court order, because the Department "is an extension of the court." The circuit court rejected this argument, which S.J.A. does not argue on appeal.

February 8, 2018 meeting with her case manager, but he could also have been referring to nonparticipation prior to moving back to Wisconsin. In either case, the "services" were not identified; nor was it shown how or whether they were explained to S.J.A.

¶10 The circuit court found that S.J.A. lacked good cause for not visiting or communicating with her children and that consequently, the Department had established grounds for abandonment as a matter of law. The court noted that "the dispositional order contained conditions precedent to visitation or communication," but that "[t]he good cause argument for failing to visit or communicate by [S.J.A.] does not include any history of any compliance [with those conditions] other than the case worker meeting on [February 8, 2018,] and the psychological exam of [April 5, 2018,] and then a series of e-mails, which do not seem to make any progress." It is unclear to which e-mails the circuit court was referring, as the record does not contain any e-mails between S.J.A. and anyone representing the Department subsequent to the February 8 case manager meeting.[7] In any case, the court determined that

---

[7] The materials submitted by S.J.A. in response to the summary judgment motion include various forms of electronic communication between and among S.J.A., the caseworker, R.A. (S.J.A.'s aunt, who has current custody), and the children's father (who agreed to voluntarily terminate his rights). We note that the clear import of these communications was that S.J.A. desired, and made efforts, to communicate with her children. Indeed, one could infer from these communications that S.J.A.'s aunt was actively attempting to impede these efforts. For example, in one exchange S.J.A. wrote to her aunt, in a message obviously intended to be partially conveyed to her children, "Happy Easter [A.K.] and [L.K.]—love mom. Can they call me? Or can you at least send a picture? I'm asking you to take a picture. Of their faces. A nice picture and don't worry that won't count as contact." Her aunt wrote back, "I don't care what it counts as and Jackie already told you that phone calls are not allowed. I would have just sent you a picture until you have to be so sassy. Now you can wait until I have time." S.J.A. wrote back later to say, "Well hopefully you can find time today. Hope they enjoyed their Easter Morning." While not entirely clear due to the foundational issues previously noted, *see supra* note 2, R.A. appears to have written back "still too busy."

> [S.J.A.'s] route would have been to work with Human Services and start setting up the gradual reintegration that she would be looking for with these children through therapy, group meetings, counseling, however it was determined to be in the children's best interest to reintegrate their mother.
>
> What I read in the documents is that [S.J.A.] wanted direct communication or visits with the children and did not appear anxious to set forth the steps she needed to take before she got there.
>
> This is a situation where [S.J.A.] chose to leave the state of Wisconsin.[8] This impeded any ability to provide local services….
>
> ….
>
> The response to the summary judgment motion by [S.J.A.] does not indicate efforts at compliance that would rise to the level of good cause for failing. There's more of an argumentation back and forth rather than a willingness to be open and comply.
>
> … I do find that based on the record that's been presented, [S.J.A.] failed or refused to engage in available recommended services….

The circuit court concluded that S.J.A. was an unfit parent, based on the ground of abandonment.

¶11 The circuit court held the dispositional hearing on July 26, 2019. The court determined that it was in the best interest of the children to terminate S.J.A.'s parental rights and entered written orders involuntarily terminating those rights. This appeal follows.

---

[8] It is unclear whether this is in reference to S.J.A. initially moving to the state of Washington or in reference to S.J.A.'s returning to Washington at some point following her April 2018 psychological evaluation.

*Discussion*

¶12     We review a grant of summary judgment de novo, while benefitting from the circuit court's analysis. *State v. Bobby G.*, 2007 WI 77, ¶36, 301 Wis. 2d 531, 734 N.W.2d 81. Partial summary judgment is appropriate in the unfitness phase of a TPR case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); *Steven V. v. Kelley H.*, 2004 WI 47, ¶6, 271 Wis. 2d 1, 678 N.W.2d 856. Summary judgment "is designed to eliminate unnecessary trials" because "there is no triable issue of fact" to present to a jury. *Maynard v. Port Publ'ns., Inc.*, 98 Wis. 2d 555, 562, 297 N.W.2d 500 (1980). "The court takes evidentiary facts in the record as true if not contradicted by opposing proof." *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶23, 241 Wis. 2d 804, 623 N.W.2d 751. "[I]nferences to be drawn from the underlying facts," however, "should be viewed in the light most favorable to the party opposing the motion, and doubts as to the existence of a genuine issue of material fact are resolved against the moving party." *Id.* (footnotes omitted).

¶13     On summary judgment the moving party has the initial burden of showing the absence of genuine issues of material fact. *Central Corp. v. Research Prods. Corp.*, 2004 WI 76, ¶19, 272 Wis. 2d 561, 681 N.W.2d 178. "A 'material fact' is one that is 'of consequence to the merits of the litigation.'" *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294 (citation omitted). A factual issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Baxter v. DNR*, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct. App. 1991) (citation omitted). Once

the moving party has satisfied the initial burden, the nonmoving party "may not rest upon the mere allegations or denials of the pleadings but ... must set forth specific facts showing that there is a genuine issue for trial." WIS. STAT. § 802.08(3). If the court is satisfied that there is no genuine issue of material fact, the court shall enter judgment as a matter of law. Sec. 802.08(2); *Jackson v. Benson*, 218 Wis. 2d 835, 852, 578 N.W.2d 602 (1998).

¶14    TPR proceedings involve "the awesome authority of the State 'to destroy permanently all legal recognition of the parental relationship.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 128 (1996) (citation omitted). For this reason, due process requires proof of parental unfitness by clear and convincing evidence. *Steven V.*, 271 Wis. 2d 1, ¶23. In Wisconsin, this involves a two-part procedure for involuntary termination. *Id.*, ¶24. In the first or "grounds" phase, the petitioner must prove by clear and convincing evidence that there exist one or more of the twelve statutory grounds for parental unfitness under WIS. STAT. § 48.415(1)-(10). *Steven V.*, 271 Wis. 2d 1, ¶¶24-25. If the parent is declared unfit in this phase, then the proceeding moves to the dispositional phase, which focuses on the best interests of the child. *Id.*, ¶¶26-27. The present appeal involves the grounds phase only.

¶15    In the grounds phase, a parent does not have an absolute right to a jury trial, and parental unfitness may be determined on summary judgment. *Id.*, ¶¶33-34. Summary judgment, however, "will ordinarily be inappropriate in TPR cases premised on … fact-intensive grounds for parental unfitness" such as abandonment (this is in contrast to "so-called 'paper grounds'" or "statutory grounds for unfitness … [that] are expressly provable by official documentary evidence, such as court orders or judgments of conviction"). *Id.*, ¶¶36, 37.

11

Where, as here, "the applicable statutory basis for unfitness … provides for a 'defense' or 'explanation' that would preclude a finding of unfitness, and there are material facts in dispute regarding a parent's asserted 'defense' in this regard, then summary judgment will not be appropriate." *Id.*, ¶48 n.8; *see also J.M.W. v. J.R.P.*, No. 2017AP1390, unpublished slip op. ¶18 (WI App Sept. 20, 2017) ("[W]e strongly caution against the use of summary judgment at a TPR proceeding where the parent is present and objecting.").

¶16     In the present case, the argued-for period of abandonment is March 24, 2017, through May 17, 2019.  WISCONSIN STAT. § 48.415(1)(a)2. establishes abandonment as grounds for termination where the parent has not visited or communicated with the child for at least three months.  However, as of February 8, 2018, the Department still anticipated S.J.A.'s being able to reestablish contact with her children, provided that she engage in "recommended services," "participate in an evaluation," and "demonstrate stability."  The focus of the summary judgment briefs, along with the circuit court's focus at the motion hearing, was on whether S.J.A. was taking any steps to follow through on these conditions.  That this was the focus of inquiry by the circuit court seems appropriate given that (1) beginning in May 2017, the Department expressly told S.J.A. that contact with the children would not be permitted; (2) there is virtually nothing in this record to indicate what she needed to do to change that directive; and (3) her affidavit and documents in the Department's file suggest that she was continuously making efforts at communication.  The circuit court implicitly determined, and we agree, that if S.J.A. were fulfilling or seeking to fulfill conditions imposed in early February 2018, then "good cause" could exist as a defense to abandonment.  *See Carla B. v. Timothy N.*, 228 Wis. 2d 695, 706, 598 N.W.2d 924 (Ct. App. 1999) (discounting father's defense to abandonment on the

theory that he was "judicially foreclosed from visiting his daughter," because the court order merely created "a condition precedent"—seeking extended counseling—that father did not fulfill). Therefore, we will not focus on S.J.A.'s conduct during any three-month period prior to February 8, 2018. Instead, the real question is whether, as a matter of law, S.J.A.'s actions subsequent to meeting with her case manager in February 2018 fail to establish good cause.

¶17 We conclude that this is not a question that can be decided on summary judgment. Put another way, there are facts and inferences that can be genuinely disputed as to whether S.J.A. was attempting to reestablish contact with her children. Pursuant to WIS. STAT. § 48.415(1)(c), S.J.A. had the burden of proof (by a preponderance of the evidence) as to good cause for abandonment, meaning she needed to present evidence that at least raised an issue of fact to support this defense. *See* ***Odd S.-G. v. Carolyn S.-G.***, 194 Wis. 2d 365, 372, 533 N.W.2d 794 (1995). In that regard, S.J.A. showed that she fulfilled at least one of the Department's requirements (and arguably the only requirement that was set forth with specificity): she underwent a psychological evaluation. Although S.J.A. did not reference any other steps she took, the Department's requirements are decidedly vague; as defense counsel put it, "[i]t is very ambiguous to say [S.J.A.] did not comply with services." We find noteworthy the unrefuted fact that there is no record of the Department's informing S.J.A. of any specific services she needed to obtain following her psychological evaluation. In addition, it was only (for the first time) in its reply brief to the circuit court that the Department raised the primary argument it presented at the summary judgment hearing and which formed the basis for the circuit court's decision: that the Department's decision to prohibit communication did not constitute per se "good cause" for not communicating with her children and that S.J.A.'s case for "good cause" required

her to meet a "condition precedent" to reestablishing communication.[9]  Therefore, S.J.A. may not have had a fair opportunity to offer evidence as to her knowledge of and compliance with the "conditions" that ultimately led to the circuit court's decision.  *See Leske v. Leske*, 197 Wis. 2d 92, 97-98, 539 N.W.2d 719 (Ct. App. 1995) (noting that "[t]he burden is on the moving party to demonstrate a basis *in the record*" showing that nonmoving party lacks evidence on point on which nonmoving party bears burden of proof); *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 292, 507 N.W.2d 136 (Ct. App. 1993) (party moving for summary judgment must "explain the basis for its motion").

¶18    In response to the summary judgment motion, perhaps S.J.A. should have attested that she was working towards fulfilling the numerous conditions contained within the original dispositional order.  She did in fact attest to this point later, at least to a degree, at the dispositional hearing.[10]  Be that as it may, S.J.A.'s response set forth at least some facts in support of her "good cause" defense.  The Department, on the other hand, pointed to no specific conditions that S.J.A. failed to meet, nor did it explain when or how these conditions were clearly

---

[9] The original motion, and each of the supporting affidavits, were exclusively focused on the lack of any communication as the basis for the motion.  These did not address the fact that S.J.A. was precluded from having any communication with her children, or why that did not constitute "good cause."  S.J.A.'s purported failure to meet "conditions" for reunification was not raised until the Department's reply.

[10] At the dispositional hearing, S.J.A. explained the positive progress she was making in her life, such as securing stable housing and employment, in order to have a "better life for [her] and [her] children."  Although this could establish that S.J.A. was "demonstrat[ing] stability," seemingly a condition of reestablishing contact, S.J.A. did not present this information at summary judgment.  Our review must be confined to the record before the circuit court on summary judgment; therefore, we cannot consider any dispositional hearing testimony for purposes of showing a disputed issue of fact.  *See Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 556, 508 N.W.2d 610 (Ct. App. 1993).  This evidence does, however, lend support to the court's concern that S.J.A. may not have been given a fair opportunity to oppose summary judgment on the "failure to meet conditions" grounds on which it was granted.

communicated to her. *See, e.g.*, **Brown County v. B.P.**, 2019 WI App 18, ¶36, 386 Wis. 2d 557, 927 N.W.2d 560 (reversing grant of summary judgment in part because "the record is also unclear as to what services the Department wanted T.F. to complete before she would be permitted to visit Allie, and if T.F. had the opportunity to complete those services"). Perhaps the conditions were clearly explained, and perhaps S.J.A. could have, but did not, meet them. If so, that can be addressed at trial. But on this record it is simply not sufficiently clear. This is particularly true given the inherently fact-based nature of this issue and the fundamental rights at stake, which have led our supreme court and this court to generally discourage the use of summary judgment in TPR cases, and on this issue specifically.

¶19 It appears that the Department, in moving for summary judgment, was motivated by a desire to achieve stability for A.K. and L.K. The result, however, was a misapplication of summary judgment methodology. In determining that there was no good cause for abandonment, the circuit court made findings arising out of disputed facts, or facts not conclusively established, as to S.J.A.'s knowledge, efforts, and motivations—all of which are necessarily relevant to a "good cause" analysis centered on whether S.J.A. was fully aware of, and made a good-faith effort to meet, conditions for reunification. As a result, S.J.A. was denied her right to a fact-finding hearing, pursuant to WIS. STAT. §§ 48.31 and 48.422. We express no opinion as to what the appropriate outcome should be in this case, but simply hold that the circuit court should resolve it following a fact-finding hearing in which evidence is presented and duly considered on the issue of abandonment. Whether other grounds may exist for termination we leave to the circuit court's determination.

¶20     For the foregoing reasons, we reverse the order finding that S.J.A. abandoned A.K. and L.K. and is therefore an unfit parent.    Because the Department did not establish grounds for termination, this court also reverses the order involuntarily terminating S.J.A.'s parental rights.  This matter is remanded for a fact-finding hearing in accordance with WIS. STAT. § 48.424.  In light of the mandate in ***Bobby G.***, 301 Wis. 2d 531, ¶6, we note that if the Department prevails in the grounds hearing, a new disposition hearing would also be necessary.

*By the Court.*—Orders reversed and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

16