COURT OF APPEALS
DECISION
DATED AND FILED

March 12, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP2832**

STATE OF WISCONSIN

Cir. Ct. No. 2023TP3

IN COURT OF APPEALS
DISTRICT III

IN RE THE TERMINATION OF PARENTAL RIGHTS TO G. A. K., A PERSON UNDER THE AGE OF 18:

SAWYER COUNTY HEALTH AND HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

D. K.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Sawyer County: MONICA M. ISHAM, Judge. *Reversed and cause remanded.*

¶1 STARK, P.J.[1] Daniel[2] appeals an order terminating his parental rights to his daughter, Gina. Daniel argues that the circuit court erred by granting Sawyer County Health and Human Services' (the County) motion for partial summary judgment during the grounds phase of the termination of parental rights (TPR) proceeding.[3] We agree with Daniel that genuine issues of material fact exist, preventing summary judgment. We therefore reverse and remand for further proceedings.

## BACKGROUND

¶2 In August 2023, the County filed a petition to terminate Daniel's and Susan's parental rights to Gina, alleging that grounds for TPR existed under WIS. STAT. § 48.415(2)(a), continuing need of protection or services (continuing

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials. We do the same for the child and the child's mother, Susan. Susan is not a party in this appeal. We discuss her only to the extent necessary to decide Daniel's appeal.

[3] A contested TPR proceeding involves a two-step procedure. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402. The first step is a factfinding hearing, during which a jury or circuit court determines "whether any grounds for the termination of parental rights have been" proved. *Id.*, ¶26 (quoting WIS. STAT. § 48.424(3)). The termination proceeding then moves to the second step, a dispositional hearing, during which the circuit court must consider the best interests of the child in deciding whether to terminate the parent's rights. WIS. STAT. § 48.426(2).

CHIPS).[4]  In July 2024, the County filed a motion for summary judgment on the grounds for TPR, supported by an affidavit from Erika Prince, Gina's current caseworker.

¶3      Susan filed a written objection to the County's motion for summary judgment, arguing that a jury should be asked to make factual findings as to whether the County made a reasonable effort to provide the services ordered by the circuit court and whether she failed to meet the conditions established for Gina's safe return to their home.[5]

¶4      In November 2024 the circuit court, the Honorable Monica M. Isham presiding, held a two-day evidentiary hearing on the County's summary judgment motion.  Julie Kincannon, Gina's former County caseworker, testified that the County first became involved with Daniel and Susan in November 2018, when they were arrested and law enforcement found drug paraphernalia,

_____

[4] In October 2023, the circuit court, the Honorable John M. Yackel presiding, held a hearing on the County's petition, but Daniel and Susan failed to appear.  The County sought a default judgment against both parents as to the grounds phase of the TPR proceeding.  The court found that Daniel and Susan were served with a summons to appear at the hearing.  The court then appeared to grant the default judgment, but immediately thereafter it noted that there was a deficiency in the petition.  At a subsequent hearing, which Daniel and Susan both attended, the court noted that there was an affidavit of service that had not been notarized and that it did not actually enter a default judgment.

We also note that the County's August 2023 TPR petition did not provide facts to support the County's alleged TPR grounds, contrary to WIS. STAT. § 48.42(1)(c)2.  After the October hearing, the County filed an amended TPR petition containing facts to support its alleged TPR grounds.  These issues do not affect our analysis.

[5] It appears that Daniel did not file any written objection to the County's motion for summary judgment.  However, at the motion hearing, Daniel argued that the circuit court should deny the County's motion because a genuine issue of material fact existed as to whether the County made a reasonable effort to provide Daniel with the court-ordered services.  On appeal, the County does not argue that Daniel forfeited this issue by failing to file a written response to its summary judgment motion.

marijuana, mushrooms, and methamphetamine in their home and within Gina's reach. When Gina was removed from Daniel and Susan's care, she was first placed with Daniel's grandfather, then in foster care, and then with Daniel's father and his spouse, before later being returned to Daniel and Susan's care. At the time of Gina's return to their care, Daniel and Susan were "set up with" alcohol and other drug abuse (AODA) therapy "and mental health therapy," were being "tested frequently," and had home visits provided through the County.

¶5    Kincannon stated that Gina was again removed from Daniel and Susan's home in September 2020, due to reports that Daniel and Susan's drug use was escalating, and that they did not appear to be providing proper care for Gina. Gina was placed in Nebraska with a relative of Daniel. Daniel and Susan had virtual, unsupervised visitation with Gina three times a week, which was later modified to only two times a week, due to Daniel and Susan not regularly attending all three visits. Their contact with Gina was later further modified to supervised video visits, due to Daniel and Susan's failure to comply with the rules of visitation. Visitation was ultimately suspended in August 2022. Kincannon stated that between the time visits were suspended and December 2022, Daniel sent Gina one letter while he was in treatment.

¶6    Kincannon testified that when Gina was removed from her parents' care in September 2020, the County filed a permanency plan with conditions for Daniel's reunification with Gina. The plan included Daniel undergoing an AODA evaluation with the goal of a lifestyle free from use of illegal substances, maintaining all rules of probation, no further criminal charges or criminal activity, demonstrating appropriate parenting, providing financial means to care for Gina, and mental health therapy as needed. Kincannon stated that Daniel and Susan did

not regularly maintain contact with the County, that they missed a lot of drug tests, and when they did test, they typically tested positive for methamphetamine.

¶7 Kincannon opined that Gina continued to be in need of protection or services and that the County had made reasonable efforts in trying to reunify Daniel and Susan with Gina. Kincannon testified that she tried to contact Daniel and Susan as often as she could, that she encouraged treatment, and that she tried to help Daniel and Susan have successful visits with Gina. Kincannon stated her belief that Daniel's and Susan's failure to meet the conditions of reunification was related to drug use, trauma, and mental illness. Kincannon further stated that she stopped working for the County in December 2022.

¶8 Erika Prince testified that she became the caseworker on Gina's case in December 2023. She stated that after Kincannon left the County, Gina's case was assigned to Karla Kay, who left the County in May 2023, and the case was then assigned to Sarah Inczauskis, before it was ultimately assigned to Prince. Prince noted that by the time she received the case, Inczauskis had already filed a petition for TPR. Prince's first contact with Daniel and Susan occurred on June 28, 2024.

¶9 Prince testified about the conditions for reunification provided in Gina's permanency plan, some of which Daniel and Susan successfully fulfilled—such as signing all documents that the County provided and updating the County with new contact information—and some of which they did not fulfill—such as completing AODA counseling and contacting the County weekly. Prince opined that Gina continued to be in need of services at the time of the hearing.

¶10 Regarding the efforts the County made for reunification, Prince stated that "[i]t takes cooperation to provide services," but she explained that there

had not been "a lot of cooperation by the parents" because they rescheduled or canceled a lot of visits and sometimes refused to speak to the County. However, Prince also admitted that after Kay left the County in May 2023, the County stopped providing services to Daniel and Susan because: (1) the County was seeking TPR; and (2) there were only "three workers left" in the County, and the County was "very[,] very strapped for attempting to get things done."

¶11 At the conclusion of the hearing, the circuit court stated that it "listened to the testimony that's been made on this case so far" and applied it "to the factors that the Court has to consider." The court found that Daniel and Susan suffer from "a substance abuse issue" that affected their ability to care for themselves and for Gina. The court noted that there had been a recent "uptick" in Daniel and Susan's cooperation with the County but that this change was because the County began seeking TPR. The court stated, "the [C]ounty cannot go past the basic level of services because the parents have not achieved the basic level of showing their efforts." The court found that there was no genuine issue of material fact and that the County had proved the alleged TPR grounds by clear and convincing evidence. The court therefore granted the County's motion for summary judgment as to the grounds phase of the TPR proceeding.

¶12     At the dispositional hearing, the circuit court found that it was in Gina's best interests that Daniel's and Susan's parental rights be terminated, and it entered the TPR order. Daniel now appeals.[6]

## DISCUSSION

¶13     The circuit court granted the County's motion for summary judgment as to the TPR ground of continuing CHIPS, which, as relevant to this appeal, requires proof:

> 1. That the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under [WIS. STAT. §§] 48.345, 48.347, 48.357, 48.363, 48.365, 938.345, 938.357, 938.363 or 938.365 containing the notice required by [WIS. STAT. §§] 48.356 (2) or 938.356 (2).
>
> 2.
>
> a. In this subdivision, "reasonable effort" means an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child or of the expectant mother or child, the level of cooperation of the parent or expectant mother and other relevant circumstances of the case.

---

[6] Susan filed a separate appeal, arguing only that, during the dispositional phase of the TPR proceeding, the circuit court failed to make explicit factual findings regarding Gina's best interests, contrary to WIS. STAT. § 48.426(3)(a), (b), and (d) and that the court, therefore, erroneously exercised its discretion. *Sawyer Cnty. HHS v. S.R.*, No. 2025AP1226, unpublished op. and order, 1-6 (WI App Sep. 23, 2025). On September 23, 2025, this court released a summary disposition order affirming the order terminating Susan's parental rights, concluding that the record supported the circuit court's decision regarding the Gina's best interests and that Susan's argument "essentially amount[ed] to a 'magic words' requirement that Wisconsin courts have previously considered and rejected." *Id.* at 6.

We cite this unpublished case not as precedent or authority but to provide general background information regarding this court's order on Susan's appeal. *See* WIS. STAT. RULE 809.23(3)(a).

b. That the agency responsible for the care of the child and the family or of the unborn child and expectant mother has made a reasonable effort to provide the services ordered by the court.

3. That the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order listed under subd. 1., not including time spent outside the home as an unborn child; [and] that the parent has failed to meet the conditions established for the safe return of the child to the home.

WIS. STAT. § 48.415(2)(a).

¶14 Daniel argues that the circuit court erred by finding that the County met its burden on summary judgment to show the undisputed facts proved that grounds existed to terminate his parental rights to Gina based upon a continuing need of protection or services. Specifically, he contends that genuine issues of material fact exist as to whether the County made a reasonable effort to provide him with the services necessary for him to meet the court-ordered requirements of his permanency plan.

¶15 As an initial matter, the County argues that this case has already been decided on appeal and that, under the law of the case doctrine, *see Univest Corp. v. General Split Corp.*, 148 Wis. 2d 29, 38, 435 N.W.2d 234 (1989), our prior decision in Susan's case controls.[7] Whether a decision establishes the law of

---

[7] We pause to note several deficiencies with the County's appellate brief. First, the County's arguments "are not developed themes reflecting any legal reasoning. Instead, the arguments are supported by only general statements." *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Second, the County's brief lists three issues but only addresses two, and the County fails to state how the circuit court decided those issues, contrary to WIS. STAT. RULE 809.19(1) and (3)(a)2. Third, the County's statement of the case contains a factual allegation that is not in the record, contrary to RULE 809.19(1)(d) and (3)(a)2. Fourth, the County cites an unpublished opinion, but it does not provide a copy of that opinion in its supplemental appendix, contrary to RULE 809.19(3)(b). Fifth, the pagination of the County's brief does not conform to RULE 809.19(8)(bm). We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

the case is a question of law that we review de novo. *State v. Jensen*, 2021 WI 27, ¶12, 396 Wis. 2d 196, 957 N.W.2d 244.

¶16    "The law of the case doctrine is a 'longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.'" *State v. Stuart*, 2003 WI 73, ¶23, 262 Wis. 2d 620, 664 N.W.2d 82 (citation omitted). "The doctrine of 'law of the case' is rooted in the concept that courts should generally follow earlier orders in the same case and should be reluctant to change decisions already made, because encouragement of change would create intolerable instability for the parties." *Id.* (citation omitted).

¶17    The County argues that this case has already been decided by *Sawyer County Health & Human Services v. S.R.*, No. 2025AP1226, unpublished op. and order, 6 (WI App Sep. 23, 2025), where we concluded that the circuit court did not erroneously exercise its discretion during the dispositional phase of the TPR proceeding by finding that termination of Susan's parental rights was in Gina's best interest. We therefore summarily affirmed the court's order terminating Susan's parental rights to Gina.

¶18    We reject the County's argument. In *S.R.*, we addressed Susan's argument that the circuit court erroneously exercised its discretion during the dispositional phase of the TPR proceeding by "'by failing to adequately consider and weigh the required statutory factors' for determining Gina's best interests." *Id.* at 1. Nowhere in our decision did Susan argue, nor did we address, whether the court erred by granting the County's motion for summary judgment as to the grounds phase of the TPR proceeding. *See id.* at 1-6. In addition, nowhere in our opinion did we address or even mention Daniel and his parental rights. *See id.*

9

We have therefore not previously decided the issue Daniel raises here—i.e., whether the court erred by granting summary judgment during the grounds phase of the TPR proceeding because genuine issues of material fact existed regarding whether the County made a reasonable effort to provide Daniel with court-ordered services. Consequently, our prior opinion in Susan's case does not control our decision in this appeal.

¶19 Turning now to Daniel's argument, we review a circuit court's grant of summary judgment de novo, "applying the same methodology as the circuit court but benefiting from the circuit court's analysis." *See* ***State v. Bobby G.***, 2007 WI 77, ¶36, 301 Wis. 2d 531, 734 N.W.2d 81. Partial summary judgment is available during the grounds phase of a TPR proceeding "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); *see also* ***Steven V. v. Kelley H.***, 2004 WI 47, ¶35, 271 Wis. 2d 1, 678 N.W.2d 856. "A factual issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" ***Baxter v. DNR***, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct. App. 1991) (citation omitted). "In evaluating the evidence, we draw all reasonable inferences from the evidence in the light most favorable to the non-moving party." ***State v. Hydrite Chem. Co.***, 2005 WI App 60, ¶19, 280 Wis. 2d 647, 695 N.W.2d 816.

¶20 Our supreme court has stated that summary judgment will "ordinarily" be inappropriate in TPR cases premised on the "fact-intensive" continuing CHIPS ground, given that, in most cases, "the determination of parental unfitness will require the resolution of factual disputes by a court or jury at the fact[]finding hearing, because the alleged grounds for unfitness involve the

adjudication of parental conduct vis-à-vis the child." ***Steven V.***, 271 Wis. 2d 1, ¶36. Nevertheless, even in continuing CHIPS cases, "[t]he propriety of summary judgment is determined case-by-case." ***Id.***, ¶37 n.4.

¶21 In this case, we conclude that a genuine issue of material fact exists as to whether the County made a reasonable effort to provide Daniel with the court-ordered services needed to comply with his permanency plan, and, consequently, the circuit erred by granting the County's motion for summary judgment as to the grounds phase of the TPR proceeding.

¶22 Viewing the evidence in the light most favorable to Daniel, the County presented some evidence regarding intermittent efforts it made to provide Daniel with services from September 2020 to August 2022, after which his visitation with Gina was suspended. However, the County presented no evidence as to what, if any, services were provided to Daniel from May 2023, when Kay left the County, until June 28, 2024, when Prince was assigned to Daniel's case and made her first effort to contact him. Prince's testimony reflects that, thereafter, she believed that the pending TPR action obviated the County's need to make reasonable efforts to provide Daniel with court-ordered services. However, there is no such exception in the relevant statute. Prince also testified that the County did not provide services to Daniel while she supervised his case because there were only "three workers left" in the County, and the County was "very[,] very strapped for attempting to get things done."

¶23 We conclude that this is the type of fact-intensive case that our supreme court considered inappropriate for a decision on summary judgment. As Daniel argues:

there was a critical question of fact on which the parties disagreed: whether the County's admittedly intermittent efforts to provide court-ordered services qualified as "reasonable" under [WIS. STAT.] § 48.415(2)(a)2.a. Given this dispute, for which there was evidence pointing both ways, and given the fact-intensive nature of continuing CHIPS allegations more broadly, the County did not establish that it was entitled to judgment as a matter of law.

¶24 Daniel further correctly notes that the reasonable-effort standard takes into account the parents' individual characteristics. *See* WIS. STAT. § 48.415(2)(a)2.a. He asserts that the primary obstacle in his life is his substance abuse, and,

> [g]iven this context, and the inherently recurring nature of the parenting problems addiction presents, it's arguable that Daniel needed *more* consistent services and attention—not less. A fact[]finder would have to take the nature of addiction into account when assessing the steps the [County] did and didn't take and the level of cooperation Daniel did and didn't display.

¶25 In other words, the issue in dispute was not capable of resolution on summary judgment. But rather than trying the issue to a jury, a right to which Daniel was entitled, *see* WIS. STAT. § 48.31(2), the circuit court heard testimony over portions of two days, as a part of the summary judgment motion, and then stated it had reached a decision as a matter of law. We conclude that viewing the evidence in the light most favorable to Daniel, a reasonable juror could have found that the County did not make reasonable efforts to provide Daniel with the necessary services. The court therefore erred by granting summary judgment against Daniel during the grounds phase of the TPR proceeding. Accordingly, we reverse the order terminating Daniels' parental rights and remand for further proceedings.

12

*By the Court.*—Order reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.